UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM YEAGER,

        Plaintiff,

  v.                                                     Case No. 20-cv-459-pp

WUWM 89.7 MILWAUKEE NPR PUBLIC RADIO,
and NPR,

        Defendants.

---

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO ELECTRONICALLY FILE (DKT. NO. 4) AND SCREENING COMPLAINT**

---

      On March 21, 2020, the plaintiff—representing himself—filed a complaint alleging that in the spring of 2017, the defendant defamed him. Dkt. No. 1.

      On March 23, 2020, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 3. About one week later, he added a supplement to his motion. Dkt. No. 5. The plaintiff also filed a motion for an order allowing him to file documents using the court's electronic filing system. Dkt. No. 4.

      The court notes that it has been almost a year since the plaintiff filed his complaint. The court regrets that its congested docket and recent pandemic-

1

related administrative duties have caused a delay in addressing the plaintiff's complaint. The court hopes through this order to get the case on track.

**I.      Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

To allow a plaintiff to proceed without prepaying the filing fee, the court first must decide whether he is able to pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a) and 1915(e)(2)(B)(i). The plaintiff used a September 2020 version of the application to proceed without prepaying the filing fee, titled "Short Form." Dkt. No. 3. It does not contain much of the information requested on this district's Non-Prisoner Request to Proceed in District Court without Prepaying the Filing Fee. https://www.wied.uscourts.gov/sites/wied/files/documents/forms/Petition%20to%20Proceed%20Without%20Prepayment.pdf.

The motion indicated that the plaintiff's gross pay at the time of filing was $0.00 but that he received $770 per month in Social Security insurance as well as $33 per month to help with food. Dkt. No. 3 at 1.[1] The plaintiff said that he had only $75 in his checking or savings account. Id. at 2. He reported owning a 1997 Chevy Tahoe, which he described as "broken, doesn't work, door handles, windows, etc. value is about $1200.00" and a 1967 Chevy van that he reported is no longer running. Id. While the form asked the plaintiff to

---

[1] The text at the end of page one of the plaintiff's application is cut off. The last line that the court can read states, "S/ William Yeager P.S. as to the question below my account of course is supplied with 770.00 a month, however by the . . . . ."

2

list any "real estate" that he owned, the plaintiff did not mention any, but he stated that his "taxes for [his] house are about 240.00 a year." Id. The plaintiff indicated that he paid $62 monthly for water and trash, $75 for electricity and between $35 and $175 monthly for gas, depending on the temperature. Id.

The supplement the plaintiff filed is a state-court Petition for Waiver of Fees and Costs—Affidavit of Indigency. Dkt. No. 5. This is the form that a person would use if the person had filed a lawsuit in *state* court and was asking that court to waive the filing fee. It contains the same information the plaintiff provided on the earlier-filed form, dkt. no. 3.

It appears likely that the plaintiff cannot afford to pay the filing fee, but the court does not have enough information right now to tell for sure. For example, the plaintiff appears to own a home on which he pays taxes, but he did not list that home or state its value. The court will allow the plaintiff to amend his request. Along with this order, the court is sending the plaintiff a blank version of this district's current form. The court encourages the plaintiff to fill out the entire form. It also suggests that the plaintiff avoid writing or typing information at the very bottom margin of each page. The court's docketing system inserts case information—the case number, filing date and docket number—at the bottom of each page of a document, and if someone has written or typed information at the very bottom of the document, the electronic notation will cover up that information and make it impossible for the court to read.

The court also notes that if the plaintiff files the amended motion for leave to proceed without prepaying the filing fee and the court grants that motion, that decision will not relieve the plaintiff of the obligation to pay the filing fee. The Seventh Circuit Court of Appeals has held that "every . . . person who proceeds [without prepaying the filing fee]" is "liable for the full fees," because "all [28 U.S.C.] § 1915(a) does for any litigant is excuse the *pre*-payment of fees." <u>Robbins v. Switzer</u>, 104 F.3d 895, 898 (7th Cir. 1997). Even if the court ends up allowing the plaintiff to proceed without *prepaying* the filing fee, he still will owe that fee in full.

If the plaintiff files an amended motion to proceed without prepaying the filing fee by the deadline the court sets below and the court grants that motion, it will have the complaint served on the defendants. If the plaintiff does *not* file the amended motion by the deadline the court sets below, the court will set a deadline by which he will be required to pay the full filing fee in order to proceed with the lawsuit.

## II. Screening

Assuming the plaintiff demonstrates that he is unable to pay the filing fee, the court still must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that she is entitled to relief. Fed. R. Civ. P. 8(a)(2). A plaintiff

4

does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). At the same time, the allegations "must be enough to raise a right to relief above the speculative level." Id. The court must liberally construe the allegations of her complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

When he filed the case, the plaintiff was a resident of Cottonwood Falls, Kansas.[2] Dkt. No. 1 at 1, 71. He alleges that National Public Radio is "based in Washington, D.C.;" he does not state the corporate citizenship of NPR or of defendant WUWM 89.7. Although the complaint is seventy-one pages long, the factual allegations are more concise.[3] The plaintiff asserts that he is a songwriter/musician, independent film maker, humanitarian and media activist. Dkt. No. 1 at ¶6. He says that in 2016, he, his wife and others were planning a series of benefit concerts in an underground missile base in Kansas; the purpose of the concerts was to provide wheelchairs to third-world victims of landmines. Id. at ¶36. He says the information about the concerts was on his website and on his wife's website. Id.

The plaintiff alleges that in January 2017, a "test pressing"—a first version of a vinyl record album—of an album called "301 Jackson St." which

---

[2] He later sent notice that his mail should be forwarded to an address in Wikieup, Arizona. Dkt. No. 7.

[3] Most of the complaint consists of legal argument and citations and citations to NPR operating documents.

5

the plaintiff had recorded in 1989, was sold on Discogs (which the plaintiff says is "a website to buy and sell vinyl records"). Id. at ¶8. The plaintiff alleges that this test pressing became "the most expensive record sold on this website." Id. He asserts that on March 22, 2017, Discogs sent a press release about the album's sale to NPR, among other media outlets. Id. at ¶¶9, 51. The plaintiff asserts that on March 23, 2017, in the wee hours of the morning, "Discogs cancelled the transaction because they believed it to be fraudulent." Id. at ¶¶9, 51. He says that the Discogs press release reported that the album sale had been canceled because Discogs believed the sale to be fraudulent and that it specifically stated that the seller and buyer of the album "were located in 2 different states and had different IP addresses." Id. at ¶93. He indicates that Discogs never accused the plaintiff of being the perpetrator of the fraudulent sale. Id. at ¶94.

The plaintiff alleges that NPR "broke the news" of the canceled sale later on the morning of March 23 in a "music news article", without notifying him that they were going to do so. Id. at ¶6. The plaintiff emphasizes that NPR published the article as a "music news article" written by a reporter, not an opinion piece by a columnist. Id. He alleges that only one source who had met the plaintiff had been interviewed for the story and that source had not been in contact with the plaintiff for over seventeen years. Id. at ¶132. He says this source provided false information about him and about his wife, whom the source never had met. Id.

6

The plaintiff alleges that the following day—March 24—"NPR continued to spread the same defamatory accusations and malicious falsehoods on their radio show 'All Things Considered,' which is the flagship news program on the American network National Public Radio." Id. at ¶16. The plaintiff says that NPR again did not contact him beforehand to give him "the opportunity to reply and defend himself against the attacks on his character and reputation." Id. The plaintiff alleges that the article and the broadcast were biased against him, containing defamatory and false statements made with malice. Id. at ¶20. He argues that facts were misrepresented and taken out of context, that necessary information was omitted and that the result was a "complete distortion of the truth." Id. The plaintiff asserts that the article and broadcast portrayed him as corrupt, someone who had tried to perpetrate a fraudulent sale to gain fame and "infamy." Id. at ¶21. He says that the comments from NPR listeners were offensive and insulting, indicating that "the [plaintiff] was even comparted to Charles Manson." Id. at ¶22.

At paragraphs 191, 198, 219 and 227 of the complaint, the plaintiff lists some of the alleged defamatory statements—assertions of a hoax motivated by a hunger for fame or infamy, a statement that that the plaintiff may have been both the seller and the buyer of the test pressing, speculation that the test pressing did not exist, a statement that the plaintiff's recent success was a "form of infamy." Id. at ¶191.

The plaintiff alleges that three months later—presumably sometime in June of 2017 or thereabouts—the plaintiff contacted NPR in-house counsel

7

Ashley Messenger to ask for the "removal" of the article and the broadcast." Id. at ¶28. He says that Messenger got back to him, asking him if he could provide NPR with the names of the seller and the buyer (which the plaintiff perceives as an admission that NPR had "published and broadcasted an defamatory accusation of fact without proof"). Id. at ¶29. The plaintiff says he already was experiencing depression and emotional distress and that this attitude did not "set well" with him; he felt that there was "no genuine emotion of concern or what NPR had unjustly and wrongly done to a human being." Id. at ¶30. The plaintiff says that he

> began to send Ashley Messenger the same information that had been seen by NPR's journalists prior to the publication of the article and broadcast; NPR removed the article from NPR's website; the [plaintiff] informed NPR that the removal of the article would not be enough to compensate for all the damage done; NPR put the article back on their website.

Id. at ¶31.

The plaintiff indicates that the information about the planned concerts in the Kansas missile base was sent to Messenger. Id. at ¶¶28, 36. He says that Messenger shared the information about the concerts with "NPR's corporate team and the board of directors." Id. at ¶36. He asserts that he continued to send information, including a video over an hour in length "showing footage that revealed the truth of the [plaintiff] and his wife's work and people giving testimony of what they felt watching their films and videos." Id. at ¶35. The plaintiff says that Messenger told him that she "brought members of the corporate team and board of directors together to watch it." Id.

The plaintiff indicates that Messenger remained in communication with him and his wife for three weeks, telling him in an email that "we are taking this very seriously." Id. at ¶32. The plaintiff says that he refused to answer question about things he thought should have been investigated and asked before the article and story were published. Id. He says that what he wanted was removal of the defamatory story and broadcast, a "true apology," a new article and broadcast "telling the truth about his and his wife's work and mission and benefit concerts, and recompense for the damages to his work and health." Id. at ¶34. Instead, he says that Messenger told him "[i]n the same e-mail" that he could "write his own story," without guaranteeing publication and with the stipulation that NPR would decline to publish if it believed the story might not serve NPR's audience or might create liability. Id. at ¶39.

The plaintiff alleges that due to the article and the broadcast, the series of concerts planned for the Kansas missile base "had been destroyed." Id. at ¶37. He says the owner of the missile base heard the broadcast and told the plaintiff that NPR was saying bad things about the plaintiff, claiming he was a huckster and a charlatan. Id. at ¶38.

For relief, the plaintiff seeks $250 million dollars in punitive damages. Id. at ¶238.

In Wisconsin, a defamation claim includes three elements: "(1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation as to lower him or her in the estimation of the

9

community or to deter third persons from associating or dealing with him or her." Watson v. Olson, No. 19-cv-1905, 2019 WL 7282029, at *2 (E.D. Wis. Dec. 27, 2019) (citing In re Storms v. Action Wis., Inc., 309 Wis.2d 704, 721-22 (2008)).

At this early stage, the court concludes that the plaintiff has stated sufficient facts to allow him to proceed on a state-law defamation claim. He has alleged that defendant NPR made false statements (implying that he was the seller and the buyer of the test press of 301 Jackson St.), that it communicated those statements by speech and writing to the public and that the statements were designed to lower him in the estimation of the listener. He also has alleged that defendant WUWM 89.7 repeated these statements. The defendants will be free to argue that the statements were not false or were not intended to harm the plaintiff's reputation or lower him in the estimation of others. Defendant WUWM 89.7 will be free to argue that it had no reason to suspect the statements were false. But at this stage of the litigation, the plaintiff has stated enough facts to allow the lawsuit to go forward.

The court notes, however, that as it has stated, the plaintiff has not identified the corporate citizenship of NPR or WUWM 89.7. Defamation is a state-law cause of action. This federal court has subject-matter jurisdiction over state-law claims only under its "diversity of citizenship" jurisdiction. 28 U.S.C. §1332. Diversity jurisdiction requires the lawsuit to be "between citizens of different States." Id. There must be "complete" diversity for the federal court to have jurisdiction, which means that "none of the parties on either side of the

litigation may be a citizen of the state of which a part on the other side is a citizen." Wick v. Roth, No. 21-C-138, 2021 WL 409714, at *1 (E.D. Wis. Feb. 5, 2021) (quoting Howell v. Tribune Entm't Co., 106 F.3d 215, 217 (7th Cir. 1997)). The court assumes that both defendants are corporate citizens of states other than the state in which the plaintiff resides, but if that turns out not to be true, the court may not have subject-matter jurisdiction.

The complaint also alleges that the court has personal jurisdiction under Wisconsin's long-arm statute. Dkt. No. 1 at ¶5. The court's conclusion that the plaintiff has stated sufficient facts to state a claim for the purposes of waiver of the requirement that he prepay the filing fee does not mean that the court agrees that it has personal jurisdiction over the plaintiff's claims. That is a question for a later stage of the lawsuit.

If the plaintiff files his amended motion to proceed without prepaying the filing fee by the deadline the court sets below, and if the court grants that motion, it will order service of the complaint on the defendants. The defendants then will have the opportunity to answer or otherwise respond to the complaint.

### III. Motion to Electronically File (Dkt. No. 4)

Finally, the plaintiff filed a motion asking the court for permission to file documents electronically and giving the court permission to use his email address to send him notices and documents. Dkt. No. 4. He says that he already has registered for a PACER account and knows how it works. Id.

General Local Rule 5(a)(2) (E.D. Wis.) exempts self-represented parties

11

from the district's electronic filing requirements. Section I(A)(1) of the court's Electronic Case Filing Policies and Procedures Manual states that parties who are representing themselves cannot file electronically unless authorized by the court. https://www.wied.uscourts.gov/e-filing/ecf-policies-and-procedures. This court does not grant self-represented parties leave to file electronically absent extraordinary circumstances. The plaintiff has not explained why he needs to file electronically. The court will deny the motion without prejudice.

### III. Conclusion

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **ORDERS** that if the plaintiff still wishes to proceed without prepaying the filing fee, the plaintiff must file an amended motion on the enclosed form. He must file the motion in time for the court to *receive* it by the end of the day on **April 16, 2021**. If the court does not receive an amended motion for leave to proceed**, April 16, 2021**, the court will set a deadline by which the plaintiff must pay the entire filing fee in order to proceed with the case.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to file electronically. Dkt. No. 4.

Dated in Milwaukee, Wisconsin this 15th day of March, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

12

Case 2:20-cv-00459-PP   Filed 03/15/21   Page 12 of 12   Document 8