**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

**WILLIAM YEAGER,**

        **Plaintiff,**

**v.**

**WUWM 89.7 MILWAUKEE NPR
PUBLIC RADIO**

**and NPR,**

        **Defendants.**

**Civil No. 20-cv-459-PP**

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>NATIONAL PUBLIC RADIO, INC.'S MOTION TO DISMISS</u>**

## INTRODUCTION

This lawsuit is Plaintiff William Yeager's *fifth* attempt in now *eight* federal courts to prosecute claims against National Public Radio, Inc.[1] ("NPR") for its 2017 reporting about his dealings with the music industry.  More than four years ago, NPR published an article on its website and aired a brief broadcast segment about the apparent record-breaking sale of an album by Mr. Yeager, followed by the transaction's cancellation by the website hosting the auction. Offended that the reports did not portray him as the high-minded artist he says he is, Mr. Yeager responded by suing NPR, its journalists, and its in-house counsel. He first sued in Kansas. When that suit failed, he sued NPR and more than a dozen current or former employees or board members in the District of Columbia, and sued NPR and its Member stations in Arkansas, Massachusetts, and here in Wisconsin.

Two and one-half years ago, the U.S. District Court for the District of Kansas dismissed Mr. Yeager's original defamation lawsuit for failure to state a claim with prejudice.  That court held that none of the nearly 20 statements in the article and broadcast Mr. Yeager challenged was actionable as defamation because they were either unverifiable statements of opinion or not harmful to Mr. Yeager's reputation.  Mr. Yeager appealed, but the Tenth Circuit affirmed the district court's ruling and the U.S. Supreme Court denied certiorari.

Mr. Yeager then filed four federal lawsuits in other jurisdictions, asserting largely identical claims arising from the same broadcast and article.  The U.S. District Court for the Western District of Arkansas dismissed, with prejudice, as barred Mr. Yeager's substantively identical claims against NPR and a Member station in Arkansas pursuant to 28 U.S.C. § 1915, a ruling the Eighth Circuit summarily affirmed.  More recently, a magistrate judge in the U.S. District Court for the

---

[1] The caption of the Complaint incorrectly refers to National Public Radio, Inc. by its initials.

District of Massachusetts has recommended dismissal of another substantively identical lawsuit against NPR and a Member station there with prejudice. (As of this writing, NPR's motion to dismiss Mr. Yeager's lawsuit in the District of Columbia is pending.)

In short, every court that has ruled on Mr. Yeager's meritless claims has rejected them. This Court should, too, because they are barred by res judicata (issue and claim preclusion) and false light is not recognized in Wisconsin.

## FACTUAL AND PROCEDURAL BACKGROUND

The 71-page, 240-paragraph Complaint in this case (Dkt. 1), despite its length, omits the context necessary to understand Mr. Yeager's claims, most notably the details of his previous unsuccessful lawsuits arising from the same facts. NPR therefore provides the following summary of the relevant background, drawn from that litigation.

### I. William Yeager and NPR's Reports About Him

In early 2017, a test pressing of a decades-old album appeared to sell for a record price of $18,000 on Discogs, a website where vinyl aficionados gather to buy and sell rare records. *Yeager v. NPR* ("*Yeager I*"), 2018 U.S. Dist. LEXIS 127749, at *3-4 (D. Kan. July 31, 2018). That $18,000 price eclipsed an earlier record sale of $15,000 for a rare album by Prince. *Id.* at *4. Andrew Flanagan, a music journalist for NPR, was intrigued by the story and began looking into the background of Mr. Yeager, the musician who recorded the album. *Id.* Discogs later announced that it had rescinded the transaction based on suspicions that it was not a legitimate sale. *Id.*; *see also* Compl. ¶¶ 9, 51, 93 (admitting transaction was cancelled because Discogs believed it was "fraudulent").

After Discogs announced it had cancelled the transaction, Flanagan reported what he found in an article published on NPR's website on March 23, 2017 (the "Article"). *See* Declaration of

Matthew E. Kelley ("Kelley Decl.") Ex. 1, Andrew Flanagan, *The Most Expensive Record Never Sold*, NPR (Mar. 23, 2017), https://www.npr.org/sections/therecord/2017/03/23/521216130/the-most-expensive-record-never-sold. The Article recounted Mr. Yeager's history of bizarre publicity stunts that included dyeing his skin brown and pretending to be "Jimmy Story," the love child of Jimi Hendrix, and a network of curious online postings offering Mr. Yeager's recordings and other memorabilia for five- and six-figure sums. Article at 1-8.[2] Flanagan's report expressed the view that Mr. Yeager was a hoaxer who may have been on both sides of the cancelled Discogs transaction. *Id.* at 1-4; *see also Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *4-8. Flanagan and his colleague Jacob Ganz then briefly discussed the controversy on an *All Things Considered* broadcast (the "Broadcast"), in which Ganz expressed the opinion that Mr. Yeager was, like many in the music industry, a huckster. *See* Kelley Decl. Ex. 2, *Music News: Chuck Berry, SoundCloud, Kendrick Lamar*, NPR (Mar. 24, 2017) at 3-4, https://www.npr.org/2017/03/24/521414750/music-news-chuck-berry-soundcloud-kendrick-lamar. (Mr. Yeager, by contrast, views himself as a "songwriter / musician, independent filmmaker, humanitarian and media activist." Compl. ¶ 6.)

Mr. Yeager contacted NPR in-house counsel Ashley Messenger three months later to demand removal of the article about him from NPR's website. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *29-30; *see also* Compl. ¶ 28. But Mr. Yeager refused Messenger's repeated entreaties to specify what parts of the Article he believed contained false statements of fact. *See* Compl. ¶ 32 (Mr. Yeager "refused to answer questions regarding issues that should have been investigated

---

[2] The Court may consider the Article and Broadcast in connection with this motion to dismiss without converting it to a motion for summary judgment because the publications are mentioned in the complaint and form the basis of Yeager's claims. *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

4

and asked prior to the story and broadcast").  Even though Mr. Yeager declined to identify any allegedly false statement of fact in the Article or Broadcast, Messenger offered to provide Mr. Yeager the opportunity to write up to 1,500 words in his defense, with the caveat that NPR reserved the right not to publish Mr. Yeager's statement if the statement would create liability for NPR. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *29; *see also, e.g.*, Compl. ¶ 39 (quoting Messenger's offer).  This offer apparently offended Mr. Yeager even further, and he refused it.  *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *29.

## II.  The Kansas Lawsuit

### A.  The U.S. District Court for the District of Kansas Dismisses Mr. Yeager's Lawsuit, and Rejects His Proposed Amended Complaint, with Prejudice

Acting *pro se* and *in forma pauperis*, Mr. Yeager filed a 93-page complaint in the U.S. District Court for the District of Kansas on March 16, 2018 (the "Kansas Lawsuit") against NPR, Flanagan, Ganz, and Messenger.  *Yeager v. NPR*, 773 F. App'x 1030, 1031 (10th Cir. 2019), *cert. denied*, 140 S. Ct. 665 (2019).  In his Kansas Lawsuit, Mr. Yeager attempted to assert claims for defamation and false light invasion of privacy arising from the Article and Broadcast.  *See Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *9 & *11 n.2.  Mr. Yeager also attempted to assert a claim against Messenger personally for allegedly refusing to agree to his demands during the summer of 2017 to have the article removed from NPR's website. *Id.* at *29-30.

Mr. Yeager asserted that more than a dozen statements in the Article and Broadcast were false and defamatory, including that "[e]verything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it;" that "[t]he story of Billy Yeager is one of purposeless obfuscation;" and that Mr. Yeager is a "huckster" and "charlatan."  *Id.* at *4-9.  NPR and its co-defendants moved to dismiss the lawsuit for failure to state a claim, which Mr. Yeager opposed.  *Id.* at *1.  On July 31, 2018, the Kansas District Court

5

issued a 29-page memorandum and order granting NPR's motion to dismiss. *See id.* at *1-31.

The District Court carefully analyzed each statement Mr. Yeager challenged and held that none was actionable as defamation and that Mr. Yeager, whom the District Court found to be a limited-purpose public figure, had not pleaded sufficient facts to permit the conclusion that the statements were published with constitutional actual malice – that is, with knowledge of falsity or with serious doubts as to their truth. *Id.* at *15-29. More specifically, the District Court held that words like "huckster," "charlatan," "hoax" and "purposeless obfuscation" are statements of opinion that are too amorphous to constitute a verifiably false statement of fact. *E.g.*, *id.* at *16-17, *20, *26-27. The District Court also held that Mr. Yeager had not pleaded facts that would plausibly establish the defendants made the statement speculating that Mr. Yeager bid on his own album with constitutional actual malice. *Id.* at *17 n.3. Regarding Messenger, the District Court held that none of the actions attributed to her in the complaint – such as corresponding with Mr. Yeager over three months, offering him an opportunity to write a response, or allegedly refusing to take down or retract the statements – was actionable. *Id.* at *29-30.

The District Court's order permitted Mr. Yeager to file an amended complaint and warned that amendment would be denied and the case dismissed with prejudice if it did not state a claim upon which relief could be granted. *Id.* at *30. In response, Mr. Yeager filed a 220-page document captioned as an "Amended Complaint," which the District Court treated as a motion to amend and proposed amended complaint. *Yeager v. NPR* ("*Yeager II*"), 2018 U.S. Dist. LEXIS 192047, at *1 (D. Kan. Nov. 9, 2018), *aff'd*, 773 F. App'x 1030 (10th Cir. 2019). NPR opposed granting leave to amend, to which Mr. Yeager filed a reply. *Id.* On November 9, 2018, the District Court issued a memorandum and order denying leave to amend as futile and dismissing the Kansas Lawsuit with prejudice because, for substantially the same reasons discussed in its earlier dismissal

6

order, Mr. Yeager had failed to plausibly plead any claim, including a new one for "outrage" (*i.e.*, intentional infliction of emotional distress). *Id.*

The District Court again reviewed the 17 statements Mr. Yeager challenged in the Article and Broadcast and reiterated that none was actionable. *Id.* at *13-24. For example, the Article's statement that it "seems" like Mr. Yeager was on both sides of the cancelled Discogs transaction was a non-actionable opinion based on disclosed facts, and in any event, Mr. Yeager had not pleaded facts showing that the statement would damage his reputation or was made with actual malice. *Id.* at *15-16. The District Court also held that Mr. Yeager was a public figure regarding not only the Discogs transaction but also his exploits as "Jimmy Story." *Id.* at *19. In addition, the court reaffirmed its dismissal of the claims against Messenger for allegedly refusing to retract the statements after corresponding with Mr. Yeager and his wife. *Id.* at *7, *25-27. Finally, in dismissing the "outrage" claim, the court found "defendants' publication and broadcast of the articles and interview, as well as defendants' refusal to grant plaintiff the relief he requested when he complained to NPR" were not actionable. *Id.* at *25-26.

### B. The Tenth Circuit Affirms the District Court's Dismissal with Prejudice

Mr. Yeager appealed the District Court's rulings to the Tenth Circuit, which affirmed the lower court's dismissal of the action. *Yeager*, 773 F. App'x at 1030. The appellate panel noted that Mr. Yeager's "briefs offer little more than generalized assertions of error, together with attacks on the appellees and their counsel." *Id.* at 1032. The appellate court affirmed the District Court's decision because Mr. Yeager only challenged the holdings that he was a public figure, and that he had not properly pleaded that the "purposeless obfuscation" statement was made with actual malice, not the other independently dispositive grounds cited by the District Court. *Id.*

### C. The U.S. Supreme Court Denies Mr. Yeager's Petitions for Certiorari and Rehearing

Undeterred, Mr. Yeager filed a petition for certiorari with the U.S. Supreme Court, which denied it without elaboration. *Yeager v. NPR*, 140 S. Ct. 665 (2019). Mr. Yeager responded to this setback in January of 2020 with a vitriolic petition for rehearing. Kelley Decl. Ex. 3, Pet. for Reh'g at 2, *Yeager v. NPR*, No. 19-6442 (Jan. 10, 2020). The petition included a photograph of Mr. Yeager standing in a graveyard holding what is apparently a rifle, underneath a statement that his options at that point included "A DECLARATION OF THE 2ND AMENDMENT OF MY RIGHT TO BEAR ARMS AGAINST THE GOVERNMENT AND THE SUPREME COURT AND ITS TYRANTS AND ITS TRAITORS." *Id.* at 2-3. Elaborating on the reference to firearms, the petition also states (punctuation, capitalization and emphasis in original):

> I am now declaring a Revolution against this Supreme Court and its nine Justices who are TRAITORS TO THE BILL OF RIGHTS AND THIS COUNTRY, SO I ASK THIS NATION AND 'WE THE PEOPLE', NOT YOU. . . WHY SHOULDN'T I STAND PROUDLY, COURAGEOUSLY FOR MY COUNTRY AND DEFEND MYSELF AND MY COUNTRY FROM YOU TRAITORS AND STAND ON MY **SECOND AMENDMENT RIGHT TO BEAR ARMS** AGAINST THE GOVERNMENT[?]

*Id.* at 9. As he did at the District Court and the Tenth Circuit, Mr. Yeager also peppered this pleading with invective and falsehoods against NPR, Flanagan and their counsel. *Id.* at 5-7.

The Supreme Court denied Mr. Yeager's petition for rehearing without comment on May 4, 2020. *Yeager v. NPR*, 140 S. Ct. 2756 (2020).

### III. The Lawsuits in Arkansas, Massachusetts, and the District of Columbia

In March 2020, again proceeding *pro se* and *in forma pauperis*, Mr. Yeager filed this action, along with three other federal lawsuits against NPR and various co-defendants, all purporting to state claims based on publication of the Article and Broadcast. Mr. Yeager filed substantively identical lawsuits to this one against NPR and its Member stations in Massachusetts

and Arkansas. *See* Compl., *Yeager v. KUAF 91.3 NPR Pub. Radio*, No. 5:20-cv-5054-TLB (W.D. Ark. Mar. 23, 2020) (Dkt. 2); Compl., *Yeager v. WBUR 90.9 Boston NPR Pub. Radio*, No. 3:20-cv-30028-KAR (D. Mass. Mar. 22, 2020) (Dkt. 1). In the District of Columbia, Mr. Yeager sued NPR and 16 of its current and former employees or board members, labeling his claims "negligence." *See* Compl., *Yeager v. NPR National Pub. Radio, et al.*, No. 1:20-cv-00755 (D.D.C. Mar. 17, 2020) (Dkt. 1).

The court in the Western District of Arkansas screened Mr. Yeager's complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed it for failure to state a claim. *Yeager v. KUAF 91.3 NPR Pub. Radio* ("*KUAF*"), 2020 U.S. Dist. LEXIS 85147, at *8 (W.D. Ark. May 12, 2020). The Arkansas court held that because the Kansas court "already decided Yeager's defamation claim against NPR, that claim is barred by *res judicata*" (*i.e.*, claim preclusion), and the claim against Member station KUAF was barred by collateral estoppel (*i.e.*, issue preclusion). *Id.* at *8-12. Mr. Yeager's false light claim failed under Arkansas law, the court said, because Mr. Yeager did not plead facts that would plausibly show either defendant acted with constitutional actual malice. *Id.* at *12-14. And Mr. Yeager's professional negligence claim failed because Arkansas does not recognize any heightened standard of care for journalists. *Id.* at *14-16.

The Arkansas court also rebuked Mr. Yeager for his contumacious behavior. When the court did not respond to an email from Mr. Yeager asking whether he should appeal or file a motion to reconsider the dismissal, Mr. Yeager wrote in another email to chambers (with apologies to this Court for Mr. Yeager's language):

> I went through your god damm courts trying to do this the so called right way, all the way to the Supreme Courts, 3 fucking years ....each of these fuckers denied myself, I am on medications due to 2 suicide attempts and you mother fucking chicken shits who are too afraid to take my case leave me here to hang AFTER I PROPERLY AND RESPECTFULLY file my case, yet you shit on me, if I was a God damm attorney you wouldn't sure as fuck wouldn't ignore me, WOULD

YOU???? Answer the God Damm question above you son of a bitch!

Kelley Decl. Ex. 4, Order at 1, *KUAF*, (May 28, 2020) (Dkt. 9).  The Arkansas court warned Mr. Yeager:  "[T]he Court cautions Yeager against the use of profane or abusive language in any future communications, pleadings, or any other documents, and the Court puts him on notice that it will impose appropriate sanctions if he does so again."  *Id.* at 2.

Mr. Yeager filed both an appeal to the Eighth Circuit and a motion for reconsideration, the latter of which the Arkansas court denied in an order dated October 23, 2020.  *See* Kelley Decl. Ex. 5, Order, *KUAF*, (Oct. 23, 2020) (Dkt. 15).  The Eighth Circuit summarily affirmed dismissal in an order dated January 13, 2021, *see id.* Ex. 6, and denied Mr. Yeager's petition for rehearing as untimely.  *Yeager v. KUAF 91.3 NPR Pub. Radio*, No. 20-2198, 2021 U.S. App. LEXIS 5542, at *1 (8th Cir. Feb. 24, 2021).

In the Massachusetts action, Magistrate Judge Katherine A. Robertson granted Mr. Yeager's motions to proceed *in forma pauperis* and to file electronically, screened the complaint under 28 U.S.C. § 1915(e)(2), and recommended dismissal because the suit is barred by claim preclusion.  *See* Kelley Decl. Ex. 7, Order and Report and Recommendation, *WBUR*, (May 12, 2021) (Dkt. 5).  The magistrate judge also recommended dismissal of the claims against WBUR under claim preclusion because it was sufficiently "closely related" to NPR to benefit from the previous rulings' preclusive effect.  *Id.* at 7-11.  Mr. Yeager's false light claim should be dismissed, the magistrate judge recommended, because Massachusetts (like Wisconsin) does not recognize that cause of action.  *Id.* at 7.[3]

Unlike his cases in Wisconsin, Arkansas and Massachusetts, Mr. Yeager's federal lawsuit in the District of Columbia purports to state a claim for "negligence" based on Defendants' alleged

_____

[3] As of this writing, the district judge in the case has not ruled on the report and recommendation.

involvement in the publication of the Article and Broadcast, and/or their alleged failure to grant the relief Mr. Yeager requested after he complained. *See* Compl. ¶¶ 1, 56-80, 100-105, *Yeager v. NPR National Pub. Radio, et al.*, No. 1:20-cv-00755 (D.D.C. Mar. 17, 2020) (Dkt. 1). Defendants' motion to dismiss Mr. Yeager's claims in that case, which relies on claim preclusion among other grounds, has been fully briefed and pending since February.

As in Arkansas, the court in the District of Columbia rebuked Mr. Yeager for improper behavior. The court struck from the docket a motion Mr. Yeager filed that consisted of "contentions regarding Defendants' counsel [that] have absolutely no bearing on the subject matter of this suit, would be wholly inadmissible, are based on admitted speculation, and could certainly be considered 'cruelly derogatory.'" Kelley Decl. Ex. 8, Order at 3, *Yeager v. NPR* (Feb. 12, 2021) (Dkt. 28). Finding that Mr. Yeager had sent "unnerving and ominous" messages to Defendants' counsel and relatives, the court also "issue[d] a warning that Plaintiff should cease from engaging in these types of communications and accusations to and about Defendants' counsel, as well as to and with his family members and their acquaintances." *Id.* at 5.

### IV. This Lawsuit

Here, Mr. Yeager attempts to plead claims for defamation and false light invasion of privacy based on statements in NPR's Article and Broadcast, which he alleges were "republished" by WUWM. *See* Compl. ¶¶ 1-2, 169-219.

The Complaint alleges that the following eight statements – all but one of which appear in the Article – were false and defamatory:

- **Statement 1:** "This is the story of a hoax that almost was. Its motivating force was a hunger for fame, or infamy, or whispered legend in a particularly American sort of way." Compl. ¶ 191(1).

- **Statement 2:** "The lightning-fast turnaround on this record-breaking sale, however, seems to have been a fiction woven by the record's creator." *Id.* ¶ 191(2).

- **Statement 3:** "Now, it seems clear that Yeager has attempted to perpetrate another hoax: He is, it seems, the seller who posted 301 Jackson St. on Discogs. He's also likely the buyer. Which means that $18,000 never changed hands and also raises the possibility that the test pressing of 301 Jackson St. does not exist at all." *Id.* ¶ 191(3).

- **Statement 4:** "Everything about this tale points to Yeager having bought his own unknown record from himself, short of Yeager actually admitting it. But to what end? Likely the one you're reading." *Id.* ¶ 191(4).

- **Statement 5:** "What comes after this, Yeager's latest arguable success (however fleetingly, he held a sales record over Prince — more than most can hope for, at least) might be a form of infamy that he could, for once, be satisfied with." *Id.* ¶ 191(5).

- **Statement 6:** (By Ganz in the Broadcast) "This guy, as good as he might possibly be, is far more interested in infamy than he is in fame and the chase of pulling the wool over people's eyes. He's a huckster. He's a charlatan." *Id.* ¶ 202.

- **Statement 7:** "Yeager, for all the belief he has in his promise and his failures expressing it, has repeatedly poured more of his creative energy into being a trickster-booster than he has an artist." *Id.* ¶ 204.

- **Statement 8:** "The story of Billy Yeager is one of purposeless obfuscation." *Id.* ¶ 206.

Mr. Yeager separately lists five allegedly defamatory statements that he says "continue to accuse [Mr. Yeager] and attribute to him dishonest and dishonorable motives," among then Statements 6, 7 and 8. *Id.* ¶ 198. The two additional statements are:

- "The album, called 301 Jackson St., was recorded by Billy Yeager, a Florida man who has pursued musical fame (or at least notoriety) for 37 years, by his own account." *Id.* ¶ 198(a); and

- "Eventually, Yeager began experimenting with the web and the infinite possibilities it offers, to those with ample time on their hands, for invention, obfuscation and, most importantly, self-mythology." *Id.* ¶ 198(d).

The Complaint lists the above two statements, along with Statements 5 and 7, as "samples of false light claims." *Id.* ¶ 219. Mr. Yeager lists two other statements he does not otherwise challenge as placing him in a false light:

- "In 1990, the story goes, [singer-songwriter Bruce] Hornsby heard a demo tape of

12

Yeager's, liked what he heard and connected Yeager with Capitol Records, who gave Yeager a shot. It was the closest he would come to fame, but it cemented in Yeager's mind what he'd thought for some time: that he was destined for, perhaps owed, greatness." *Id.*

- "Instead, Yeager created a murkier — possibly entirely fictional — network of identities with the purpose of propping himself up, like stilts under a sun-worn beach house. This network appears to be composed of publicists, managers, film producers and retailers of Yeager memorabilia — or what normal folks call items of sentimental value." *Id.*

While his Complaint is not entirely clear, Mr. Yeager also alleges that "Flanagan and Ganz's supervisors are liable for negligence and malpractice (professional negligence) because they failed to ensure the standards of NPR's Code were met." *See id.* ¶¶ 126-27. Mr. Yeager seeks in this action an unspecified amount of compensatory damages and $250 million in punitive damages. *Id.* ¶¶ 236, 238.

<u>**ARGUMENT**</u>

Mr. Yeager's defamation claims (and to the extent he attempts to plead them, any other claims) should be dismissed because the Kansas and Arkansas rulings preclude his attempt to re-litigate the same claims based on the same statements from the Article and Broadcast. Further, Mr. Yeager cannot litigate a false light claim because that tort is not recognized under Wisconsin law.

Moreover, "[a]lthough district courts should construe *pro se* complaints liberally, *pro se* litigants are not excused from compliance with procedural rules." *Brooks v. Complete Warehouse & Distribution LLC*, 708 F. App'x 282, 285 (7th Cir. 2017). Mr. Yeager must properly plead his claims just like any other litigant. Because he has failed to do so and cannot overcome this failure, this action should be dismissed with prejudice.

**I.    Res Judicata Bars Mr. Yeager's Defamation and Any Other Claims**

Because the dismissals by the Kansas and Arkansas courts operate as decisions on the

merits, the doctrine of res judicata bars this lawsuit, which should be dismissed with prejudice. Res judicata, the U.S. Supreme Court has explained, is the umbrella term for claim preclusion and issue preclusion, the two ways in which a court judgment bars future litigation. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

Under claim preclusion, a final judgment of a court of competent jurisdiction "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Id.* (citation omitted). By contrast, issue preclusion prohibits "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Id.* (citation omitted). Federal preclusion law applies here because the preclusive judgments were issued by federal courts. *United States ex rel. Conner v. Mahajan*, 877 F.3d 264, 270 (7th Cir. 2017).

The Seventh Circuit has explained that res judicata may be raised on a Rule 12(b)(6) motion "if the availability of [the] defense is apparent in the plaintiff's complaint itself," particularly where, as here, public records from the previous case are available for judicial notice. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). Here, not only are the prior rulings against Mr. Yeager public and provided to the Court, the Complaint refers to his previous unsuccessful Kansas lawsuit. *See* Compl. ¶ 32. Thus, this Court should apply res judicata now, and need not convert this Motion into one for summary judgment.

As this Court put it, "modern American law prohibits a party from raising the same claims against the same parties over and over." *Smith v. United States Cong.*, No. 19-cv-1001-pp, 2019 U.S. Dist. LEXIS 197559, at *28 (E.D. Wis. Nov. 14, 2019) (Pepper, J.). Res judicata thus promotes fairness and the conservation of judicial resources because "[a]llowing the same issue

to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another." *B&B Hardware, Inc. v. Hargis Indus.*, 575 U.S. 138, 140 (2015). That is precisely what Mr. Yeager is attempting to do in this lawsuit (and the three others he filed in 2020), and it is precisely why he should not be allowed to do so. Here, Mr. Yeager's claims are barred by both claim preclusion and issue preclusion.

### A. The Kansas and Arkansas Dismissals Bar Mr. Yeager's Claims

The Seventh Circuit has explained that the doctrine of claim preclusion

bars litigating claims which were, or could have been, decided in a prior suit . . . , so long as there is "(1) an identity of the parties or their privies; (2) [an] identity of the cause of action; and (3) a final judgment on the merits."

*Conner*, 877 F.3d at 271 (citations omitted). A subsequent claim is precluded when it shares "a single core of operative facts" as its predecessor, and "[a]n unsuccessful party may not . . . frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation." *Harper Plastics, Inc. v. Amoco Chems. Corp.*, 657 F.2d 939, 945 (7th Cir. 1981) (citation omitted).

The dismissals of Mr. Yeager's claims in the Kansas and Arkansas Lawsuits preclude his claims against NPR here. ***First*,** NPR was a defendant in both lawsuits. *See, e.g.*, *KUAF*, 2020 U.S. Dist. LEXIS 85147, at *5-6 ("This is not the first time Yeager has sued NPR regarding the offending article."); *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *1; Compl. at 1.

WUWM is in privity with NPR for the purposes of this lawsuit. The Seventh Circuit has explained that "[p]arties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests." *Studio Art Theatre v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (citations omitted). For res judicata purposes, that means claim preclusion "'bars subsequent suits against those who were not party to a prior suit if their interests are closely related to those who were.'" *Sierra-Lopez v. Pagels*, No. 20-cv-305-pp,

15

2020 U.S. Dist. LEXIS 141448, at *12-13 (E.D. Wis. Aug. 7, 2020) (Pepper, J.) (quoting *Tartt v. Nw. Cmty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006)).  Here, WUWM and NPR share the same legal interests regarding the Article and Broadcast; for example, the Complaint alleges that WUWM acted as NPR's agent by "republishing" them.  *See* Compl. ¶¶ 1-5.  The magistrate judge in Massachusetts also concluded that the Member station named in that nearly identical lawsuit was sufficiently "closely related" to NPR for Yeager's claims against it to be precluded.  *See* Kelley Decl. Ex. 7 at 10 (citations omitted).  NPR has sufficiently represented WUWM's interests, having obtained dismissal of the Kansas Lawsuit.

*Second*, the claims Mr. Yeager asserts in this case are ones he either raised or could have raised in the Kansas and Arkansas Lawsuits.  All of the relevant claims in those lawsuits arose from the same operative facts: publication of the Article and Broadcast.  *KUAF*, 2020 U.S. Dist. LEXIS 85147, at *6; *Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *4-5; *see also, e.g.*, Compl. ¶¶ 8-10, 16.

Mr. Yeager's main claim in the Kansas and Arkansas actions was for defamation, and Yeager challenged in those suits each of the statements on which he bases his defamation claim in this action.  The Kansas court dismissed Yeager's defamation and false-light claims because none of the challenged statements was actionable as a matter of law:

**Statement 1:**  The Kansas court held that the Article's statement that the Discogs "hoax that almost was" was motivated by Yeager's "hunger for fame or infamy" was not actionable because it was an expression of opinion and "the description of plaintiff's motivation is not verifiable."  *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *18; *Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *14-15 (holding that Yeager "does not provide good grounds to alter the court's decision" on that statement).

**Statement 2:**  Likewise, the Kansas court held that this statement – that the cancelled Discogs sale "seems to have been a fiction woven by the record's creator" – was not actionable because the proposition that Yeager engineered a bogus sale of his album was an opinion based on the facts disclosed in the Article.  *Id.* at *13-15.

**Statement 3:**  Like Statements 1 and 2, this portion of the Article posits that Yeager "attempted to perpetrate a hoax" by apparently acting as both buyer and seller in the cancelled Discogs sale and suggests "the possibility that the test pressing of 301 Jackson St. does not exist at all."  *See* Compl. ¶ 191(3).  It is not actionable, the Kansas court held, for the same reasons that Statements 1 and 2 are not actionable:  it is an opinion based on disclosed facts, and "plaintiff does not allege facts plausibly showing that the opinion that he bid upon his own album is defamatory." *Yeager II*,  2018 U.S. Dist. LEXIS 192047, at *16.

**Statement 4:**  This statement, that "everything about this tale points to Yeager having bought his own unknown record from himself," was not actionable for the same reasons as Statements 1-3, the Kansas court held.  *Id.* at *15.

**Statement 5:**  The statement that the publicity about the cancelled Discogs transaction "might be a form of infamy that [Yeager] could, for once, be satisfied with," was not actionable because it was speculation about Yeager's motivation rather than an assertion of verifiable fact, the Kansas court held.  *Id.* at *17.

**Statement 6:**  Ganz's statement in the Broadcast that Yeager was a "huckster" and "charlatan" interested in infamy and "pulling the wool over people's eyes," could not sustain a defamation claim, the Kansas court said, because it is a non-defamatory opinion based on disclosed facts.  *Yeager I*,  2018 U.S. Dist. LEXIS 127749, at *16-17.  Further, the Kansas court held, "the terms 'huckster' and 'charlatan' are vague and subject to multiple interpretations" and therefore

17

are incapable of being proven true or false. *Id.* at *17; *see also Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *25-26 (reaffirming this holding from *Yeager I*).

**Statement 7:** Referring to Mr. Yeager as having "poured more of his creative energy into being a trickster-booster than he has an artist" is not defamatory because, like other statements, it is an opinion based on non-defamatory facts discussed in the Article, the Kansas court held. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *27; *see also Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *22-23 (reaffirming this holding from *Yeager I*).

**Statement 8:** The statement that "[t]he story of Billy Yeager is one of purposeless obfuscation" is yet another non-actionable opinion based on the non-defamatory facts stated in the Article, the Kansas Court held. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *26-27; *see also Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *17 (reaffirming this holding from *Yeager I*).

The Kansas court also held that the additional statements Mr. Yeager appears to challenge here were not actionable as defamation. The statement that Mr. Yeager "pursued musical fame (or at least notoriety) for 37 years," Compl. ¶ 198(a), is non-defamatory speculation about Mr. Yeager's motivation and is too vague to be verifiable, the Kansas court held. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *18-19; *see also Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *17 (reaffirming this holding from *Yeager I*). Likewise, the statement that Mr. Yeager experimented with the Internet's potential "for invention, obfuscation, and, most importantly, self-mythology," Compl. ¶ 198(d), is not actionable because it is vague, incapable of being proven true or false, and not defamatory. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *27-29; *see also Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *17 (reaffirming this holding from *Yeager I*).

As an alternative ground for dismissing Mr. Yeager's lawsuit, the Kansas court held that Mr. Yeager was a public figure with respect to the Article and Broadcast and had failed to plausibly

plead facts showing that NPR published them with the requisite degree of fault: constitutional actual malice, which is either knowing falsity or publishing with serious doubts as to the truth of the challenged statements. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *15-16, 17 n.3, 19 n.4, 22, 26-27; *see also Yeager*, 773 F. App'x at 1031 (summarizing the District Court's holdings). This independent and equally preclusive holding dooms Mr. Yeager's defamation claim here as well.

In dismissing Mr. Yeager's defamation claim, the Arkansas court held that "[t]he Kansas District Court found that Mr. Yeager's claims failed because NPR's statements were: (1) not made with actual malice; (2) based on the speaker's subjective opinion; (3) not defamatory; and (4) were so vague as to be subject to multiple interpretations." *KUAF*, 2020 U.S. Dist. LEXIS 85147, at *6. The Arkansas court therefore dismissed Mr. Yeager's defamation claim – which is identical to that in this lawsuit – pursuant to 28 U.S.C. § 1915 because it was barred by claim preclusion. *KUAF*, 2020 U.S. Dist. LEXIS 85147, at *8.

Mr. Yeager's allegations related to false light or negligence also are barred.[4] The Complaint states, without elaboration, that "Flanagan and Ganz's supervisors are liable for negligence and malpractice (professional negligence) because they failed to ensure the standards of NPR's Code were met" Compl. ¶ 126. To the extent that Mr. Yeager was attempting to plead a claim related to negligence against NPR (WUWM did not employ or supervise Flanagan or Ganz), such claims are precluded because they arise from the same facts as the defamation claim and Mr. Yeager could have asserted them in the Kansas Lawsuit. *See, e.g.*, *Highway J Citizens Grp. v. United States DOT*, 456 F.3d 734, 743 (7th Cir. 2006) ("A plaintiff may not avoid an earlier

_____

[4] Besides being barred by claim preclusion, Mr. Yeager's false light claim fails for the additional reason that Wisconsin does not recognize that tort. See Section II, *infra*.

judgment on the merits by merely concocting a new legal theory." (citation omitted)).

**Third,** both the Kansas and Arkansas dismissals are final judgments on the merits. A Rule 12(b)(6) dismissal for failure to state a claim is a ruling on the merits that precludes future litigation. Fed. R. Civ. P. 41(b); *see also, e.g., Kamelgard v. Macura*, 585 F.3d 334, 339 (7th Cir. 2009) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). The Kansas court dismissed Mr. Yeager's lawsuit on that basis, and the Tenth Circuit affirmed. *See Yeager*, 773 F. App'x at 1031-32; *Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *1; *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *1. The Arkansas ruling also bars Mr. Yeager's defamation claim because "a dismissal at the screening stage for failure to state a claim" under 28 U.S.C. 1915 "is a decision on the merits of the complaint" with *full preclusive effect*. *Coleman*, 860 F.3d at 470; *see KUAF*, 2020 U.S. Dist. LEXIS 85147, at *1 (screening Mr. Yeager's complaint pursuant to 28 U.S.C. § 1915(e)(2)).

Mr. Yeager has repeatedly sued NPR for defamation and false light over the same statements he challenges here and has uniformly lost on the merits. The Supreme Court has succinctly explained that "a losing litigant deserves no rematch after a defeat fairly suffered." *B&B Hardware*, 575 U.S. at 147 (citation omitted). Mr. Yeager is not permitted to have a do-over. Mr. Yeager's defamation, false light, and any other claims in this case satisfy all requirements for claim preclusion, and therefore should be dismissed with prejudice.

### B. Issue Preclusion Also Bars Mr. Yeager's Claims

Even if the Kansas and Arkansas dismissals somehow did not preclude this lawsuit, Mr. Yeager's claims against both defendants would be barred by issue preclusion. The Seventh Circuit has instructed that

> [u]nder federal law, the doctrine of issue preclusion bars relitigating factual or legal issues if "(1) the issue sought to be precluded is the same as that involved in the

prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action [i.e., their interests were represented even if they were not a party in the prior suit]."

*Conner*, 877 F.3d at 270 (citation omitted). Issue preclusion prohibits a party from relitigating a factual or legal determination even if it arises in another lawsuit involving different opposing parties. *Thomas v. Gish*, 64 F.3d 323, 326 (7th Cir. 1995).

All of these issue preclusion prerequisites apply to bar Mr. Yeager's defamation, false light, and any other claims. Multiple dispositive legal issues essential to the final judgments have been raised, contested, submitted for judicial determination and conclusively determined against Mr. Yeager in the District of Kansas in opinions the Tenth Circuit affirmed, and for which the Supreme Court denied certiorari.

As discussed in detail *supra*, the Kansas court held as a matter of law, after hearing extensive arguments from both sides, that none of the statements Mr. Yeager challenges here was actionable as defamation or false light. The Kansas court held – as the Tenth Circuit summarized – that all of the challenged statements "were (a) based on the speaker's subjective opinion, (b) not defamatory, or (c) so vague as to be subject to multiple interpretations." *Yeager*, 773 F. App'x at 1031; *see Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *16-29; *Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *13-25.

Thus, the central legal issue – whether any of the challenged statements could support a defamation or false-light claim – was resolved against Mr. Yeager by the Kansas court, and Mr. Yeager lost his appeals to the Tenth Circuit and U.S. Supreme Court. The issue was vigorously litigated by Mr. Yeager and was essential to the final judgment against him. That precludes his defamation or false-light claims here.[5]

_____

[5] To the extent he attempted to plead one, Mr. Yeager has no cause of action for negligence because

The Kansas court already heard Mr. Yeager's arguments on the dispositive issues in this case and firmly ruled against him in a judgment affirmed by the Tenth Circuit and undisturbed by the U.S. Supreme Court. This Court should deny Mr. Yeager's attempt to relitigate these settled issues and dismiss this case with prejudice.

## II. Wisconsin Does Not Recognize Claims for False Light

Mr. Yeager's attempts to plead a claim for false light invasion of privacy (Compl. ¶¶ 195-219) also fail for the simple reason that Wisconsin does not recognize the false light tort. *See, e.g.*, *Schmalfeldt v. Johnson*, No. 15-CV-1516, 2016 U.S. Dist. LEXIS 86118, at *7 (E.D. Wis. July 1, 2016). As the Wisconsin Supreme Court has explained, when the Wisconsin legislature created a cause of action for invasion of privacy in 1977, it codified three of the four privacy torts described in the Restatement (Second) of Torts, but did not provide for an action for false light. *Zinda v. La. Pac. Corp.*, 149 Wis. 2d 913, 928-29, 440 N.W.2d 548, 555 (1989); *see also Ladd v. Uecker*, 2010 WI App 28, ¶19, 323 Wis. 2d 798, 810, 780 N.W.2d 216, 221 (Wisconsin does not recognize false light tort); *Schmalfeldt*, 2016 U.S. Dist. LEXIS 86118, at *7 (same); *Abu-Shawish v. United States*, No. 10-C-0473, 2011 U.S. Dist. LEXIS 93747, at *18 (E.D. Wis. Aug. 22, 2011) (same). Mr. Yeager's false light claim must be dismissed with prejudice because he cannot state a claim for a

---

the Kansas court held as a matter of law that Mr. Yeager is a limited-purpose public figure in the context of the Article and Broadcast. *Yeager I*, 2018 U.S. Dist. LEXIS 127749, at *15-16; *Yeager II*, 2018 U.S. Dist. LEXIS 192047, at *16 n.2 & 19. The First Amendment requires that public figures seeking to recover damages allegedly caused by defamatory speech must plead and prove by clear and convincing evidence a higher degree of fault than negligence: constitutional actual malice, defined as knowledge of falsity or serious doubts as to truth. In other words, "proof of journalistic negligence is never enough." *Thompson v. Nat'l Catholic Reporter Publ'g Co.*, 4 F. Supp. 2d 833, 839 (E.D. Wis. 1998). Moreover, it cannot be negligent to publish statements that are, like the statements Mr. Yeager challenges here, not defamatory as a matter of law. *See Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶41, 351 Wis. 2d 479, 515, 840 N.W.2d 255, 271 ("Because the contents of the broadcast were not false or defamatory, [the plaintiff] cannot prove that the media defendants violated any standard of care.").

nonexistent cause of action.

## **CONCLUSION**

For all of the foregoing reasons, Defendant National Public Radio, Inc. respectfully requests that this Court grant this motion and enter an order dismissing this action with prejudice.

Dated: July 2, 2021          Respectfully submitted,

BALLARD SPAHR LLP

_s/ Matthew E. Kelley_
Matthew E. Kelley (WIED Bar No. 1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1112
Fax: (202) 661-2299
kelleym@ballardspahr.com

David J. Bodney (application for admission forthcoming)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Tel: (602) 798-5400
Fax: (602) 798-5595
bodneyd@ballardspahr.com

*Counsel for Defendant National Public Radio, Inc.*

23

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2021, I caused the foregoing to be filed and

served electronically via the Court's CM/ECF system and served via U.S. Mail on Plaintiff as

follows:

> William Yeager
> 206 State Street
> Cottonwood Falls, KS 66845

> /s/ *Matthew E. Kelley*
> Matthew E. Kelley