UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WILLIAM YEAGER,

        Plaintiff,

  v.

WUWM 89.7 MILWAUKEE NPR PUBLIC RADIO,
and NPR,

        Defendants.

Case No. 20-cv-459-pp

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
(DKT. NOS. 16, 27) AND DISMISSING CASE**

---

On March 21, 2020, the plaintiff—representing himself—filed a complaint regarding statements allegedly made by employees of defendant NPR about the plaintiff during a radio segment broadcast by defendant WUWM 89.7 Milwaukee NPR Public Radio (WUWM). Dkt. No. 1. In its order screening the plaintiff's complaint, the court concluded that the plaintiff had stated sufficient facts to proceed on a state-law defamation claim. Dkt. No. 8.

On July 2, 2021, NPR filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 16. NPR argues that the plaintiff's claims are barred by *res judicata* and that Wisconsin does not recognize claims for false light. Dkt. No. 17 at 13, 22. WUWM filed its own motion to dismiss that same day. Dkt. No. 27. WUWM argues that it is not a suable entity but that it is a state entity and that any claim against it is barred by sovereign immunity

1

under the Eleventh Amendment. Dkt. No. 28. The plaintiff did not respond to either motion.

The court will grant the motions and dismiss the case.

## II. Facts

The court recounted the facts in its screening order:

When he filed the case, the plaintiff was a resident of Cottonwood Falls, Kansas.[] Dkt. No. 1 at 1, 71. He alleges that National Public Radio is "based in Washington, D.C.;" he does not state the corporate citizenship of NPR or of defendant WUWM 89.7. Although the complaint is seventy-one pages long, the factual allegations are more concise.[] The plaintiff asserts that he is a songwriter/musician, independent film maker, humanitarian and media activist. Dkt. No. 1 at ¶6. He says that in 2016, he, his wife and others were planning a series of benefit concerts in an underground missile base in Kansas; the purpose of the concerts was to provide wheelchairs to third-world victims of landmines. Id. at ¶36. He says the information about the concerts was on his website and on his wife's website. Id.

The plaintiff alleges that in January 2017, a "test pressing"—a first version of a vinyl record album—of an album called "301 Jackson St." which the plaintiff had recorded in 1989, was sold on Discogs (which the plaintiff says is "a website to buy and sell vinyl records"). Id. at ¶8. The plaintiff alleges that this test pressing became "the most expensive record sold on this website." Id. He asserts that on March 22, 2017, Discogs sent a press release about the album's sale to NPR, among other media outlets. Id. at ¶¶9, 51. The plaintiff asserts that on March 23, 2017, in the wee hours of the morning, "Discogs cancelled the transaction because they believed it to be fraudulent." Id. at ¶¶9, 51. He says that the Discogs press release reported that the album sale had been canceled because Discogs believed the sale to be fraudulent and that it specifically stated that the seller and buyer of the album "were located in 2 different states and had different IP addresses." Id. at ¶93. He indicates that Discogs never accused the plaintiff of being the perpetrator of the fraudulent sale. Id. at ¶94.

The plaintiff alleges that NPR "broke the news" of the canceled sale later on the morning of March 23 in a "music news article", without notifying him that they were going to do so. Id. at ¶6. The plaintiff emphasizes that NPR published the article as a "music news article"

2

written by a reporter, not an opinion piece by a columnist. Id. He alleges that only one source who had met the plaintiff had been interviewed for the story and that source had not been in contact with the plaintiff for over seventeen years. Id. at ¶132. He says this source provided false information about him and about his wife, whom the source never had met. Id.

The plaintiff alleges that the following day—March 24—"NPR continued to spread the same defamatory accusations and malicious falsehoods on their radio show 'All Things Considered,' which is the flagship news program on the American network National Public Radio." Id. at ¶16. The plaintiff says that NPR again did not contact him beforehand to give him "the opportunity to reply and defend himself against the attacks on his character and reputation." Id. The plaintiff alleges that the article and the broadcast were biased against him, containing defamatory and false statements made with malice. Id. at ¶20. He argues that facts were misrepresented and taken out of context, that necessary information was omitted and that the result was a "complete distortion of the truth." Id. The plaintiff asserts that the article and broadcast portrayed him as corrupt, someone who had tried to perpetrate a fraudulent sale to gain fame and "infamy." Id. at ¶21. He says that the comments from NPR listeners were offensive and insulting, indicating that "the [plaintiff] was even compared to Charles Manson." Id. at ¶22.

At paragraphs 191, 198, 219 and 227 of the complaint, the plaintiff lists some of the alleged defamatory statements—assertions of a hoax motivated by a hunger for fame or infamy, a statement that that the plaintiff may have been both the seller and the buyer of the test pressing, speculation that the test pressing did not exist, a statement that the plaintiff's recent success was a "form of infamy." Id. at ¶191.

The plaintiff alleges that three months later—presumably sometime in June of 2017 or thereabouts—the plaintiff contacted NPR in-house counsel Ashley Messenger to ask for the "removal" of the article and the broadcast." Id. at ¶28. He says that Messenger got back to him, asking him if he could provide NPR with the names of the seller and the buyer (which the plaintiff perceives as an admission that NPR had "published and broadcasted an defamatory accusation of fact without proof"). Id. at ¶29. The plaintiff says he already was experiencing depression and emotional distress and that this attitude did not "set well" with him; he felt that there was "no genuine emotion of concern or what NPR had unjustly and

3

wrongly done to a human being." Id. at ¶30. The plaintiff says that he

> began to send Ashley Messenger the same information that had been seen by NPR's journalists prior to the publication of the article and broadcast; NPR removed the article from NPR's website; the [plaintiff] informed NPR that the removal of the article would not be enough to compensate for all the damage done; NPR put the article back on their website.

Id. at ¶31.

The plaintiff indicates that the information about the planned concerts in the Kansas missile base was sent to Messenger. Id. at ¶¶28, 36. He says that Messenger shared the information about the concerts with "NPR's corporate team and the board of directors." Id. at ¶36. He asserts that he continued to send information, including a video over an hour in length "showing footage that revealed the truth of the [plaintiff] and his wife's work and people giving testimony of what they felt watching their films and videos." Id. at ¶35. The plaintiff says that Messenger told him that she "brought members of the corporate team and board of directors together to watch it." Id.

The plaintiff indicates that Messenger remained in communication with him and his wife for three weeks, telling him in an email that "we are taking this very seriously." Id. at ¶32. The plaintiff says that he refused to answer question[s] about things he thought should have been investigated and asked before the article and story were published. Id. He says that what he wanted was removal of the defamatory story and broadcast, a "true apology," a new article and broadcast "telling the truth about his and his wife's work and mission and benefit concerts, and recompense for the damages to his work and health." Id. at ¶34. Instead, he says that Messenger told him "[i]n the same e-mail" that he could "write his own story," without guaranteeing publication and with the stipulation that NPR would decline to publish if it believed the story might not serve NPR's audience or might create liability. Id. at ¶39.

The plaintiff alleges that due to the article and the broadcast, the series of concerts planned for the Kansas missile base "had been destroyed." Id. at ¶37. He says the owner of the missile base heard the broadcast and told the plaintiff that NPR was saying bad things about the plaintiff, claiming he was a huckster and a charlatan. Id. at ¶38.

4

Dkt. No. 8 at 5-9.

While the complaint does not say so, this is (at least) the fourth case regarding the same claims filed by the plaintiff. The plaintiff brought claims for defamation, false light and other torts in the United States District Courts for the District of Kansas, the Western District of Arkansas, the District of Massachusetts and the District of Columbia. Yeager v. NPR, Case No. 18-4019-SAC-GEB, 2018 WL 5884596 (D. Kan. Nov. 9, 2018) *aff'd in* Yeager v. NPR, 773 F. App'x 1030 (10th Cir. 2019); Yeager v. KAUF 91.3 NPR Public Radio, No. 5:20-CV-05054, 2020 WL 2449348 (W.D. Arkansas May 12, 2020); Yeager v. WBUR 90.9 Boston NPR Pub. Radio, Case No. 3:20-CV-30028 (D. Mass.); Yeager v. NPR, No. 20-cv-00755 (RC), 2021 WL 3510653 (D. D.C. Aug. 10, 2021)). His claims were dismissed in all four cases.

### III. Procedural History

The plaintiff filed the complaint in this district on March 21, 2020. Dkt. No. 1. Two days later, he filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 3. He also filed a motion asking the court to permit him to file electronically through PACER. Dkt. No. 4. On March 15, 2021, the court denied both motions without prejudice, giving the plaintiff an opportunity to amend his pleadings. Dkt. No. 8. On April 7, 2021, the plaintiff filed an amended motion for leave to proceed without prepaying the filing fee. Dkt. No. 9. He again asked for leave to file electronically through PACER. Id. The court granted the plaintiff's motion to proceed without prepaying the filing fee but

5

denied his request to file electronically. Dkt. No. 10. The motions to dismiss that are the subject of this order followed on July 2, 2021. Dkt. Nos. 16, 27.

**IV.    Analysis**

    A.    <u>Jurisdiction</u>

The court has diversity jurisdiction under 28 U.S.C. §1332 because the plaintiff is a citizen of Kansas and the defendants are citizens of Milwaukee and Washington, D.C, and the amount in controversy is $250 million. Dkt. No. 1 at ¶238.

    B.    <u>Standard for Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." <u>McReynolds v. Merrill Lynch & Co.</u>, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. <u>Twombly</u>, 550 U.S. at 555. A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft</u>, 556 U.S. at 678 The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . .

6

. claim is and the grounds upon which it rests.'" E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting Twombly, 550 U.S. at 555).

   C.   NPR's Motion to Dismiss

NPR argues that the plaintiff's claims are barred by *res judicata*. Dkt. No. 17 at 13. It asserts that the plaintiff's claims are barred under both claim and issue preclusion. Id. at 15. NPR points to the plaintiff's previous cases in the District of Kansas, the Western District of Arkansas, the District of Massachusetts and the District of Columbia. Id. at 15-20.

Under Wisconsin law, claim preclusion means that "a final judgment on the merits will ordinarily bar all matters which were litigated or which might have been litigated in the former proceedings." Kruckenberg v. Harvey, 279 Wis. 2d 520, 529 (2005) (internal quotations omitted). The doctrine has three elements: "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation result[ing] in final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." Id. at 885.

   1.   *Previous Cases*

The plaintiff's claims were dismissed by the District of Kansas. That case involved a claim of defamation, slander and "false light invasion of privacy and outrage" based on the same NPR story and article upon which the plaintiff bases his claims in this court. See Yeager v. NPR, 2018 WL 5884596, at *2-3. The Kansas court dismissed the plaintiff's claims and denied his motion to

7

amend the complaint "as futile because the proposed amended complaint fails to state a claim." Id. at *10.

The United States District Courts for the Western District of Arkansas and the District of Columbia both dismissed with prejudice the plaintiff's claims based upon this same story and article under the doctrine of *res judicata*. Yeager v. KAUF 91.3 NPR Public Radio, 2020 WL 2449348, *6 (W.D. Arkansas); Yeager v. NPR, 2021 WL 3510653 (D. D.C.). Similarly, the District of Massachusetts adopted a report and recommendation by a magistrate judge and dismissed the plaintiff's complaint based on claim preclusion. Yeager v. WBUR 90.9 Boston NPR Pub. Radio, 3:20-CV-30028 (D. Mass.) (Dkt. Nos. 7, 9).

2. *Same Parties*

In the Eastern District of Wisconsin, the plaintiff has sued the same defendant as in his previous cases—NPR. The plaintiff sued NPR and/or its affiliate in each of the four other cases. The plaintiff sued NPR in the Kansas, Arkansas and District of Columbia cases. The identity of the parties is the same.

3. *Final Judgment on the Merits*

The District of Kansas reached a final judgment on the merits as to the plaintiff's claims. A dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) constitutes a dismissal on the merits. White v. Poore, 660 F. App'x 475, 477 (7th Cir. 2016) (citing Kamelgard v. Macura, 585 F.3d 334, 339 (7th Cir. 2009)). While there is an exception to this rule when the dismissal specifically says otherwise, Kamelgard, 585 F.3d at 339, the decision by the

8

District of Kansas does not indicate any deviation from the rule, Yeager v. NPR, 2018 WL 5884596, at *10 ("For the above-stated reasons, the court finds that the plaintiff's motion to amend . . . should be denied as futile because the proposed amended complaint fails to state a claim. . . . The court therefore grants the defendants' motion to dismiss . . . and directs this case be closed.") (citation and footnote omitted). The District of Kansas's decision to dismiss the claim on NPR's motion to dismiss is a final judgment on the merits.

4. *Cause of Action*

The cause of action is the same here as in the plaintiff's previous cases. While NPR asserted in its motion that the plaintiff had brought claims for defamation and false light invasion of privacy in this case, dkt. no. 17 at 11, the court only identified a claim of defamation, dkt. no. 8 at 10. Even if the plaintiff had intended to state a claim for false light invasion of privacy, the court would dismiss that claim because Wisconsin does not recognize a false light invasion of privacy claim. See Schmalfedt v. Johnson, No. 15-CV-1516, 2016 WL 3659901, *2 (E.D. Wis. July 1, 2016) (citing Zinda v. La. Pac. Corp., 149 Wis. 2d 913, 929 (1989)).

The plaintiff previously brought claims in the District of Kansas against NPR for defamation, false light, professional negligence and slander. Yeager v. NPR, 2018 WL 5884596, at *3. The plaintiff brought his defamation claim in Kansas based on the statements made in NPR's article and radio broadcast. Id. at 2-3. The cause of action in the dismissed Kansas case is identical to the cause of action here.

9

Case 2:20-cv-00459-PP   Filed 11/30/21   Page 9 of 12   Document 30

The plaintiff's claim against NPR is barred by claim preclusion.[1] The court will grant NPR's motion to dismiss. Because of the court's ruling on claim preclusion, it need not address the defendant's arguments as to issue preclusion.

D.      WUWM's Motion to Dismiss

The complaint alleges that WUWM is owned and operated by the University of Wisconsin-Milwaukee. Dkt. No. 1 at ¶1. Based on this fact, defendant WUWM seeks to dismiss the plaintiff's complaint. Dkt. No. 28 at 3.

WUWM first argues that it is not a suable entity based on Wisconsin state law. Id. It asserts that it is a department of the College of Letters and Sciences at the University of Wisconsin-Milwaukee, rather than a separate legal entity. Id. According to WUWM, because neither the University of Milwaukee-Wisconsin nor WUWM, which operates within one of its colleges, can be sued, the plaintiff's claim should be dismissed. Id. at 3-4.

The defendant also argues that the plaintiff's claim against WUWM is barred under the Eleventh Amendment. Id. at 5. WUWM says that the state has not consented to suit under the state court claim brought by the plaintiff and that no exception applies. Id. at 5-6.

Under Fed. R. Civ. P. 17(b)(3), the capacity of non-individual or corporate entities to sue or be sued is determined "by the law of the state where the court is located." In Wisconsin, "[t]here is no statute granting individual university

---

[1] The district courts in Arkansas, Massachusetts and the District of Columbia reached the same conclusion.

10

institutions belonging to the University of Wisconsin System the power to sue or be sued, and courts addressing the issue have not found the universities making up the University of Wisconsin System to be suable entities under Wisconsin Law." Griffin v. UW Sys. Bd. of Regents, No. 19-cv-277-bbc, 2019 WL 5218980, *2 (W.D. Wis. Oct. 16, 2019) (citing Derby v. Univ. of Wis., 54 F.R.D. 599, 600 (E.D. Wis. 1972)).

The University of Wisconsin-Milwaukee is not a suable entity under Wisconsin law and the court must dismiss the plaintiff's claim against WUWM. See Griffin, 2019 WL 5218980, *2 (dismissing suit against the University of Wisconsin-Milwaukee because it is not a suable entity); Tadder v. Univ. of Wis.-Rock Cty, No. 13-cv-105-wmc, 2013 WL 3943498, *2 (W.D. Wis. July 30, 2013) (dismissing suit against the University of Wisconsin-Rock County because it is not a suable entity).

As to the defendant's Eleventh Amendment argument, the Eleventh Amendment of the United States Constitution prohibits federal courts from hearing cases where the plaintiff seeks money damages against a state without the state's consent. Quern v. Jordan, 440 U.S. 332, 337 (1979). WUWM is an arm of the State of Wisconsin and therefore immune from suit under the Eleventh Amendment. See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dept., 510 F.3d 681, 695 (7th Cir. 2007); Joseph v. Bd. of Regents of Univ. of Wis. Sys., 432 F.3d 746, 748-49 (7th Cir. 2005). The state has not consented to be sued.

The court will not allow the plaintiff an opportunity to amend his complaint; to do so would be futile. The court will dismiss the plaintiff's case with prejudice.

## V. Conclusion

The court **GRANTS** defendant NPR's motion to dismiss. Dkt. No. 16.

The court **GRANTS** defendant WUWM 89.7 Milwaukee NPR Public Radio's motion to dismiss. Dkt. No. 27.

The court **DISMISSES** the plaintiff's case with prejudice. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 30th day of November, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**